## Thomas J. Myers v. The State.

8 321
39 514

1. Change of Venue. — Applications for change of venue on account of local prejudice are confided by the law to the discretion of the trial judge, and his action thereon will not be revised on appeal, unless shown to have been an abuse of his discretion to the prejudice of the appellant.

2. Recusant Witness — Practice. — A prisoner being a witness for the State in a trial for murder, and refusing on cross-examination to answer whether he had not at a former trial testified contrary to his present testimony, the defence asked that he be put in solitary confinement on bread and water until he should answer; which the court refused to order. The defence, it appears, were able to prove the contrary testimony previously given by the witness. *Held*, questionable whether the action requested was authorized by law. If it was, the necessity for it in the present case, involving an indefinite delay of the trial, is not apparent, and its refusal was not error.

3. Accomplice. — An indicted accomplice, previous to his acquittal, is not a competent witness for the defence.

4. Evidence. — Statements made by a confederate in the absence of the defendant could only become competent evidence for the State by means of proof tending to show a common design between them to commit the offence.

5. Charge of the Court — Penalty for Murder in the First Degree. — While the jury in a murder case were considering of their verdict, the Revised Penal Code took effect and changed the penalty for murder in the first degree from death alone to death or the penitentiary for life. At the instance of the prosecution the court gave to the jury an additional charge, instructing them on this change of the law, and directing them to find which penalty the defendant should suffer in case they found him guilty of murder in the first degree. *Held*, error. The law in force when the trial commenced continued to be the law of the case until the trial was concluded. And the court was not authorized to give an additional charge to the jury when they had not requested it.

Appeal from the District Court of Johnson. Tried below before the Hon. J. Abbott.

This appeal is from a second conviction of the appellant for the murder of Mrs. Mary Ann Hester, on February 21, 1877. At the trial below the jury returned a verdict of murder in the first degree, but assessed the punishment at the penitentiary for life.

In the sixth volume of these Reports, page 1, will be found the appeal of this same appellant from his first conviction, on which he was adjudged to suffer death. In that report a full abstract was given of the evidence brought up upon that appeal, and all of which reappears in the present record, except the testimony of Hall and Hicks for the State, and that of Rawlings for the defence. At page 640, volume 7, is the case of Samuel H. Myers, a half-brother of this appellant, who was tried and convicted of murder in the first degree on an indictment which charged him with the murder of Mrs. Hester, and who has since suffered the extreme penalty of the law. No necessity is perceived to repeat here the evidence reported in the former of these cases; but at the trial from which the present appeal results a number of new witnesses were introduced both by the State and the defence, and it may be well to notice such new matter as is found in the record. It is nearly all either cumulative, or descriptive of localities, directions, and distances. Very little of it has any direct bearing on the question of the appellant's connection with the assassination.

J. A. Hester, husband of the deceased, testified for the State, in addition to his evidence at the former trial, that the appellant was suspected of complicity in the murder at the time Bowden was arrested (which was immediately after it was committed), but was not arrested for it until after he was indicted. Witness knew of no ill-will between the defendant and the deceased, nor could he say of his own knowledge that the defendant opposed her marriage to wit-

ness.   Defendant, however, offered no assistance to witness. in his endeavors to discover the murderer.

W. Hewitt, for the State, testified that the defendant, a few days after Clarrage's marriage to his sister, accused witness of having known all about it beforehand.   Witness told him he knew nothing about it; and then the defendant said, "Yes; and there is old Mary Ann [the deceased] would sit up there and say that she would swear on a stack of Bibles as high as the moon that she knew nothing of it, when she knew she was telling a pack of G—d d—d lies; that his tongue had been tied a long time; that now it was loose, and, by G—d, he intended to let it run."   Witness had married a sister of the deceased, and acknowledged that his feelings towards the defendant were not good.

Several witnesses for the defence testified that James M. Bowden, the accomplice witness for the State, testified at the inquest held immediately after the murder, and swore he had no knowledge whatever about it, or by whom it was committed.   Several stated that they knew the state of feeling between the defendant and the deceased, and that it had always been good.   One testified to kindly and affectionate expressions of the defendant about the deceased, and another to the solicitude shown by the defendant in behalf of the deceased's infant child, and its interest in the division of the estate of S. H. Myers, deceased.

Facts immediately relevant to the rulings will be found in the opinion of the court.   On this, as on the former appeals, vigorous and able briefs and arguments were filed on both sides.

*Amzi Bradshaw*, *W. Poindexter*, and *Z. E. Coombes*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, and *Watts, Lanham & Roach*, for the State.

WINKLER, J.   This is an appeal from a second convic-

tion of the appellant of murder in the first degree, and is
the third time the circumstances of the assassination of the
deceased, and the connection of this appellant with her
murder, has been before this court on appeal.   One of the
former appeals was from the judgment of the district judge
then presiding in the district, refusing to admit this appel-
lant and another to bail on *habeas corpus*.   3 Texas Ct.
App. 8.   The other was an appeal by this appellant, de-
cided in volume 6 of our Reports, page 1.   In the reports
of these two cases will be found much of the history of this
affair, not necessary to be repeated.   Much of the law of
the case, as with reference to the present appellant, has
been settled ; so that there are but few questions presented
by this appeal, and likely to arise on another trial, which
are necessary to be considered in this opinion.   This re-
mark will apply to the subjects embraced in the several
bills of exception taken by counsel for appellant to rulings
of the court below on the application of the defendant for
a continuance of the case, and on the defendant's motion
for a change of venue, and also to several rulings upon the
evidence on this trial, most of which are on familiar rules
of evidence, and some of which have heretofore been de-
cided by this court in this case on former appeals.

We notice in the first place, and briefly, the errors
assigned upon the refusal of the court to grant a change of
venue.   In the motion and affidavit of the defendant various
grounds are set out, going to show that a trial should not
be had in the county of Johnson where the prosecution
had been commenced ; but in the supporting affidavits, oath
is made to the single legal ground that there exists in John-
son County, where the cause had been commenced and was
then pending, so great a prejudice against the defendant
that he could not obtain a fair and impartial trial.   On
hearing the motion, testimony was heard before the court
on the question of prejudice against the defendant.   A full
statement of the evidence taken before the court, as pre-

pared and agreed to by counsel, and approved and certified by the judge to be correct, is set out in the transcript. From an examination of the evidence, as thus set out, we cannot say that it was made to appear that at the time the application was heard there existed so great a prejudice against the defendant as to prevent his obtaining a fair and impartial trial. The judge, in making an investigation as to the fact of prejudice, appears to have pursued, substantially, the practice which had generally obtained, and which has since been formulated by an amendment to the Code of Criminal Procedure, art. 583, which will obtain in future, though not in force when this proceeding was had. In matters of this character, being by law so largely confided to the sound discretion of the judge to whom the application is made, this court would not be warranted in revising his ruling unless it be made to appear that the ruling was an abuse of the discretion of the judge, and that the rights of the applicant had been prejudiced by his action in the premises. *Noland* v. *The State*, 3 Texas Ct. App. 598; *Labbaite* v. *The State*, 6 Texas Ct. App. 257, and cases there cited.

It is shown by a bill of exceptions that when Bowden, the accomplice, was testifying, he was asked by counsel for the defendant whether he had not on a former occasion testified differently from what he had sworn to on the trial, and, declining to answer the question, the court was asked to place him in confinement on bread and water in order to compel him to answer. It seems the witness was confined in the county jail at the time of the trial, and had been brought from the jail to testify. The court refused to compel the witness to answer by a resort to the means suggested by counsel, and they took a bill of exceptions to the ruling of the court. Whether the question put to the witness was one the witness had a right to decline answering or not, on the ground that the answer would tend to bring him into disgrace or subject him to a criminal prose-

cution by answering, it is unnecessary to determine. All the testimony of this witness went to the jury under a cloud of suspicion as to its truth. The law would not sustain a conviction on his uncorroborated testimony. It seems, too, that the defendant was not without the means of proving what he had previously testified to on the subject upon which he was then being questioned. So that, under the circumstances, it was not a matter of sufficient importance and materiality to have warranted a resort to the extreme means suggested, in order to delay the trial and to compel an answer, even if, indeed, the law would have justified it, which is, to say the least, questionable.

The defendant was not entitled to the benefit of Sam Myers's testimony. The question was settled in the *habeas corpus* case.

On the trial it seems that the State was permitted to prove, over objections of defendant, certain statements of Sam Myers in the absence of the defendant, and which did not relate directly to him. This testimony was admissible as tending, in connection with other testimony, to show whether the two were actuated by a common design and intent at the time of the murder. The court admitted the testimony, but charged the jury that they would not regard any statements made by Sam Myers as tending to fix guilt upon the defendant, Thomas J. Myers, except such as were made in his, Thomas J. Myers's, presence and assented to by him. In this action of the court no material error is seen, owing to the peculiarities of the case. Still, the remarks made by Sam in the absence of Thomas, and before there was any evidence of the two having acted together, could only have been legitimate upon being connected with other testimony going to show a common intent to take the life of Mrs. Hester.

Several bills of exception relate to the charge of the court, and to charges refused which the defendant's counsel had asked to be given to the jury. On a careful comparison of

the statement of facts with the charge of the court as given by the judge, we are of opinion the charge embraced substantially the law of the case, as made by the proof, on every subject of inquiry arising in the case, and was applicable to every legitimate view the jury could take of the evidence; and that the propositions of law embraced in the special charges asked by defendant's counsel, so far as correct and applicable, are embraced substantially in the general charge. We are of opinion the charge is sufficient, and that there was no necessity that the charges asked by the defendant should have been given; and that there was no error in giving the one or in refusing the other, with one exception, which will now be considered with the care its importance demands.

It is shown by the record that after the trial before the jury had ended, so far as the evidence and the charge of the court is concerned, and after the jury had retired in charge of the case to consider of their verdict, and had been so in charge of the case from the 23d to the 25th of the month of July, 1879, a bill of exceptions recites that the judge, of his own motion, had the jury called into court and asked if they had agreed on a verdict; to which the foreman replied, no, they had not; whereupon the court asked if there was any probability of their agreeing upon a verdict; to which two of the jurors replied that they thought there was no probability of their agreeing; whereupon, at the request of counsel for the State, the court, over objection by defendant's counsel, gave the jury the following additional instruction :—

" You are further instructed in this case that if you find the defendant guilty of murder in the first degree, under the facts and the law as before given you in charge, then you will say by your verdict, we, the jury, find the defendant guilty of murder in the first degree, and you will assess his punishment at death by hanging, or at confinement in the penitentiary for life, in your discretion. If you find him not guilty, you will simply say so by your verdict."

The judge, it seems, from a statement of his appended to the bill of exceptions to his action in giving the charge, supposed that the Revised Penal Code had gone into effect between the time the jury had been charged in the first instance and the time when the jury were called into court and the additional instruction was given, as above set out, and that the law entitled the defendant to whatever there was of modification in the penalty embraced in the Penal Code. We state the reasons operating on the mind of the court in his own language: " The jury was charged by the court on the evening of July 23, 1879. On July 25, 1879, the day when the Revised Penal Code went into effect, the court called in the jury and asked the questions stated in the bill of exceptions, and then charged them on the punishment for murder in the first degree as provided in said Revised Penal Code. ` The court considered the new Code as having gone into effect on the 25th day of July, 1879."

By the law in force when the trial commenced, the punishment prescribed by law for murder in the first degree was death, and the court had so charged the jury. One of the provisos of the Revised Code is that " the punishment of murder in the first degree shall be death, or confinement in the penitentiary for life."

The law in force when the trial commenced was the law of the case until it ended. *Walker* v. *The State*, 6 Texas Ct. App. 245 ; *Simms* v. *The State*, *ante*, p. 230. The subject is controlled by art. 6 of the final title of the Revised Statutes, p. 718.

Because of error of the court in calling the jury in and giving them the additional instructions, they not having requested it, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*